## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JENZABAR, INC. and CARS INFORMATION SOLUTIONS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DYNAMIC CAMPUS SOLUTIONS, LLC, MICHAEL L. GLUBKE, RICHARD W. MIDDAUGH and DOROTHY HESS,<br><br>Defendants. | CIVIL ACTION NO. 03-11345 RWZ |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER VENUE

Defendants Dynamic Campus Solutions, LLC ("DCS") Michael L. Glubke ("Glubke"), Richard W. Middaugh ("Middaugh") and Dorothy Hess ("Hess"), submit this memorandum in support of their Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer Venue to the United States District Court for the Central District of California.

## INTRODUCTION

This Court should dismiss the Complaint for lack of personal jurisdiction because there is no basis under the Massachusetts long-arm statute for exercising personal jurisdiction over any Defendant, and because the exercise of personal jurisdiction over Defendants would violate Constitutional Due Process. Specifically, no Defendant resides or has a place of business in Massachusetts and Plaintiffs' claims do not arise out of the transaction of business by any Defendant in the Commonwealth of Massachusetts. Moreover, the limited contacts between

certain Defendants and prospective clients of DCS located in Massachusetts did not have any

impact on Massachusetts commerce.  In the alternative, this Court should transfer this action to

the Central District of California because the balance of the convenience of the parties, the

convenience of witnesses, and the interests of justice weigh heavily in favor of such change of

venue.  Specifically regarding the interests of justice, factors which warrant such a transfer

include:  (1) the relative ease of access to sources of proof, (2) the fact that the events that give

rise to this action took place substantially in California, and (3) the practical problems associated

with trying the case most expeditiously and inexpensively.

## BACKGROUND

Plaintiff Jenzabar, Inc. ("Jenzabar") is a leading provider of Web-based enterprise

software and solutions to hundreds of colleges and universities located throughout the world.

(Amended Complaint ("Complaint"), ¶10).  Jenzabar has regional offices across the country,

including a regional office located in Ontario, California (i.e., in the Central District of

California).  (Affidavit of Michael L. Glubke ("Glubke Aff."), ¶ 8).  Plaintiff CARS Information

Solutions Corporation ("CARS") operates as a division of Jenzabar (Complaint, ¶10); thus,

Plaintiffs are referred to herein collectively as "Jenzabar."  Upon information and belief,

Jenzabar's annual gross sales revenues exceed $40 million.  (Glubke Aff., ¶ 8).  Jenzabar's

counsel of record in this case, Holland & Knight, LLC, has a number of offices located in the

State of California.  (Glubke Aff., ¶ 8).

DCS, which was co-founded by Defendants Glubke and Middaugh in October 2002, is a

value-added reseller of third-party's software packages and solutions to higher education

customers; DCS does not design or produce any software.  (Glubke Aff., ¶2).  DCS also offers

consulting services to higher education institutions, including advice and negotiation assistance on

bids submitted by third-party software providers (e.g., Jenzabar). (Id.) DCS' total gross sales revenue since its inception is under $200,000. (Glubke Aff., ¶ 5).

DCS' "offices" are located in the homes of Glubke, Middaugh and Thomas Homan ("Homan"), DCS' President, Chief Executive Officer and Vice President, respectively. (Glubke Aff., ¶ 4). Glubke's office/residence, which is located in Coto de Caza, California (i.e., in the Central District of California), is effectively DCS' principal office; DCS' business records are almost exclusively kept at Glubke's home. (Glubke Aff., ¶ 4). Middaugh and Homan both reside in Florida. (Glubke Aff., ¶ 4). Hess resides in Claremont, California. (Glubke Aff., ¶ 4). DCS is a limited liability corporation and has no employees, and its only "member" is Glubke; all of the other individuals (including Homan and Defendants Middaugh and Hess) who perform work on behalf of DCS are engaged as independent contractors. (Glubke Aff., ¶ 3). Currently, a total of six individuals - Glubke, Middaugh, Homan, Hess, Glubke's wife Jody Glubke (f/k/a Jody Skjerven) and Jill Brubaker – perform work on behalf of DCS. (Glubke Aff., ¶ 3). Two of the three individual Defendants, Glubke and Hess, as well as Jody Glubke and Jill Brubaker (both of whom would likely be called to testify as witnesses in this case) all reside in the Central District of California. (Glubke Aff., ¶ 4). Although DCS has sent twenty-nine (29) general letters about its business to twenty-three (23) prospective clients located in Massachusetts, DCS has not transacted any business (i.e., with clients or vendors) in Massachusetts or obtained any revenue from clients located in Massachusetts. (Glubke Aff., ¶ 5). Nor has DCS or any representative on behalf of DCS, personally (i.e., in person or via telephone) solicited any prospective clients located in Massachusetts. In fact, approximately 60 to 70% of DCS' total revenues thus far have come from clients located in California. (Id.)

Glubke was employed by CARS in the position of Vice President beginning in 1997. (Glubke Aff., ¶ 6). Glubke continued working at CARS after that company was acquired by Jenzabar in March 2000, after which he became Jenzabar's Vice President of Sales and Marketing. (Glubke Aff., ¶ 6). During his entire tenure at CARS/Jenzabar, Glubke worked at CARS' Ohio offices. (Id.) In May 2002, Glubke resigned from his employment at CARS/Jenzabar. In exchange for Jenzabar's agreement to continue paying Glubke, as a severance benefit, his salary for a period of several months following his resignation, Glubke agreed to certain non-competition restrictions. (Glubke Aff., ¶ 6). After Jenzabar learned of Glubke relocating from Ohio to California, Jenzabar ceased paying Glubke severance payments he was owed because, Jenzabar informed Glubke, his non-competition covenant would be unenforceable in California. (Id.)

Defendant Middaugh was employed by Jenzabar in the position of Area Vice President from March 2001 until February 2002, at which time Jenzabar terminated his employment. (Glubke Aff., ¶ 7). Throughout Middaugh's employment with Jenzabar, Middaugh worked out of his home office in Florida. Defendant Hess was employed by Jenzabar from April 2000 to November 2001, at which time Jenzabar terminated her employment. (Id.) Throughout her employment with Jenzabar, Hess worked out of her home office in California. (Id.)

Plaintiffs' claims against Defendants are as follows:

1.      Violation of the Lanham Act, §43(a), 15 U.S.C. §1125(a) (unfair competition and false advertising) (all Defendants);

2.      Copyright infringement (all Defendants);

3.      Breach of contract (individual Defendants);

4.      Breach of duty (individual Defendants);

5.      Intentional interference with contractual relations (all Defendants); and

4

6.      Unfair and deceptive trade practices in violation of M.G.L. c. 93A, §11 (DCS).

Plaintiffs' claims against all Defendants for alleged unfair competition and false advertising (and unfair and deceptive trade practices) apparently relate to representations and statements contained on DCS' internet web site (which is based in, and originates from, California) and in letters which DCS sent from California to various prospective customers. (Complaint, ¶ 36,80). Specifically, Plaintiffs allege that Defendants made misrepresentations regarding their own experience and DCS' clients. (Complaint, ¶49). In fact, although DCS sent letters to several prospective clients located in Massachusetts, the majority of the letters were sent to prospective clients located in California. (Glubke Aff., ¶ 5). Plaintiffs' claims against all Defendants for copyright infringement are based on allegations that DCS has offered from its California headquarters software products that infringe CARS' copyright. (Complaint ¶¶ 43-45, 58). Specifically, Plaintiffs claim that "upon information and belief," DCS has directly copied computer source code of one of Jenzabar's products. (Id. at 45).

Defendants' breach of duty claims against the individual Defendants (i.e., Glubke, Middaugh and Hess) are apparently based on, among other things, Plaintiffs' allegations that those Defendants disclosed "confidential information" to third parties. (Complaint, ¶72). Upon information and belief, the employees to whom Plaintiffs refer in Paragraphs 18 and 19 of the Amended Complaint are Jody Glubke (f/k/a Jody Skjerven) and Michael Hinson. (Glubke Aff., ¶ 9). Hinson resides in Virginia. (Id.) Moreover, none of the alleged "breaches of duty" by Defendants occurred in Massachusetts.

Plaintiffs' breach of contract claims against the individual Defendants relate to certain employment contracts between Jenzabar and the individual Defendants, none of which contracts were made in the Commonwealth of Massachusetts. (Complaint, ¶¶ 65; Glubke Aff., ¶ 10).

Specifically, Middaugh signed his agreement in Florida, Glubke signed his agreement in Ohio,

and Hess signed her agreement in California. (Id.)

Finally, Plaintiffs' claim of intentional interference with contractual relations against all

Defendants relate to their claim that Defendants have intentionally interfered with Jenzabar's

contractual relationships with its customers, vendors and employees. (Complaint, ¶75).[1]

## ARGUMENT

I. **THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS BECAUSE JURISDICTION IS IMPROPER BOTH UNDER THE MASSACHUSETTS LONG-ARM STATUTE AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION.**

In a diversity action, the law of the forum is applied to determine the amenability of a suit

against a non-resident. Sawtelle v. Farrell, 70 F.3d 1381 (1st Cir. 1995); Hahn v. Vermont Law

School, 698 F.2d 48, 49 (1st Cir. 1983); Debreceni v. Bru-Jell Leasing Corp., 710 F.Supp. 15, 19

(D.Mass. 1989).  Determining personal jurisdiction over a non-resident defendant in

Massachusetts requires a two-step analysis.  The Massachusetts long-arm statute, M.G.L. c. 223A,

§3 ("long-arm statute") lists specific instances in which a Massachusetts court may acquire

personal jurisdiction over a non-resident defendant.  See M.G.L. c. 223A, §3.  It is necessary to

establish one of the statutory criteria in order to confer personal jurisdiction over a non-resident

defendant.  However, fulfilling a statutory requirement is not enough.  Massachusetts courts have

consistently held that the function of the long-arm statute is "as an assertion of jurisdiction over

the person to the limits allowed by the Constitution of the United States." Daynard v. Ness, 90

F.3d 42 (1st Cir. 2002) quoting "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,

361 Mass. 441, 443 (1972).  See also Hahn, 698 F.2d at 50; Landmark Bank v. Machera, 736 F.

Supp. 375, 383 (D. Mass. 1990); Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good

---

[1]      Defendants will respond to the particular allegations of the Complaint at the appropriate time. However, Defendants generally deny that they have violated any laws or committed any wrongful acts.

Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979).  Therefore, a plaintiff has the

burden of establishing facts to "show not only that the long-arm statute applies but that its

application comports with due process."  A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc.,

742 F.Supp. 39 (D.Mass. 1990).  See also Droukas v. Divers Training Academy, Inc., 375 Mass.

149, 151 (1978).

> A.      There Is No Basis Under The Long-Arm Statute For Exercising Personal
>         Jurisdiction Over Defendants Because Plaintiffs' Claims Do Not Arise Out Of
>         Defendants' Transaction Of Business In Massachusetts.

Jenzabar asserts that personal jurisdiction exists under Massachusetts General Laws,

c.223A, §3 ("long-arm statute).  However, Jenzabar has failed to demonstrate the basis for

personal jurisdiction over Defendants.

The long-arm statute authorizes Massachusetts courts to exercise personal jurisdiction over

non-resident defendants "only when some basis for jurisdiction enumerated in the statute has been

established."  Good Hope Industries, Inc., 378 Mass. at 6.  No such basis has been established in

the case at bar.  The long-arm statute provides in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts
> directly or by an agent, as to a cause of action in law or equity
> arising from the person's (a) transacting any business in this
> commonwealth.

M.G.L. c. 223A, §3.  Plaintiffs have not established and cannot establish that their causes of

action, if any, arise out of any Defendant's transaction of business in the Massachusetts.

It is clear as both a matter of fact and law that Defendants have not transacted business in

Massachusetts for purposes of the long-arm statute.  First, DCS maintains no office in

Massachusetts.  In fact, DCS' offices are located in California and Florida at the homes of

individuals who perform work on behalf of the company, with the business records kept at the

principal office in Mr. Glubke's home in California.  Second, DCS has no employees, and there

are no individuals who perform work on behalf of DCS who are located in Massachusetts.

(Glubke Aff., ¶4).  Third, *DCS has not transacted any business (i.e., with clients or vendors) in*

*Massachusetts or obtained any revenues or sales orders from any entity or individual located in*

*Massachusetts.*  Therefore, DCS has not transacted any business in the Commonwealth.  (Glubke

Aff., ¶5).

Jenzabar alleges in its Complaint that "DCS has sent false and deceptive advertising to

customers and potential customers of Jenzabar within the Commonwealth." (Complaint, ¶80).

However, such activity by DCS is not a sufficient basis for this Court to exercise personal

jurisdiction over Defendants under the Massachusetts long-arm statute.  It is well-established that

"solicitation may serve as an adequate premise to jurisdiction, *but only* if done regularly and

persistently, ... *or* accompanied by significant economic benefits, ... *or* if regular solicitation is

combined with commercial benefit." Backman v. Schiff, 84 F.R.D. 132, 137 (D. Mass. 1979)

(Emphasis added.).  See also Howse v. Zimmer Manufacturing Co., Inc., 757 F.2d 448, 450-51

(D. Mass. 1985) (mere solicitation not a sufficient basis for jurisdiction); Woodlawn Realty Corp.

v. Smith-Scott Co., 226 F. Supp. 704 (D. Mass. 1964).

In the present case, DCS' only contacts with Massachusetts were through business letters

sent to approximately 23 prospective clients located within Massachusetts.  (Glubke Aff., ¶5).

These letters do not constitute "transacting business" for purposes of the Massachusetts long-arm

statute because they were neither regular and persistent, nor accompanied by any financial or

commercial benefit.  Specifically, DCS only sent letters to individuals within Massachusetts on

three occasions.  First, in April 2003, DCS sent 15 letters to individuals in Massachusetts.  Then,

in June 2003, DCS sent another seven letters to other individuals in Massachusetts.  Finally, in

July 2003, DCS sent a different letter to seven individuals, six of whom had received the June

2003 letter. DCS has not made any other contacts with the individuals to whom the letters were

sent or with any other individuals in Massachusetts. Furthermore, DCS has not received any

business from the individuals to whom it sent the letters, or from any individual within

Massachusetts. (Glubke Aff., ¶5). As a result, DCS' actions simply do not meet the requirements

for this Court to exercise jurisdiction under the Massachusetts long-arm statute.

Jenzabar has also alleged that "DCS' web site contains misrepresentations." (Complaint,

¶36). Despite these allegations, DCS' web site is not a basis on which this Court can establish

jurisdiction over DCS. Courts that have examined personal jurisdiction of foreign corporations on

the basis of web sites have consistently determined that:

> [T]he likelihood that personal jurisdiction can be constitutionally
> exercised is directly proportionate to the nature and quality of
> commercial activity that an entity conducts over the Internet. This
> sliding scale is consistent with well developed personal jurisdiction
> principles. At one end of the spectrum are situations where a
> defendant clearly does business over the Internet. If the defendant
> enters into contracts with residents of a foreign jurisdiction that
> involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper. E.g.,
> CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996). At
> the opposite end are situations where a defendant has simply
> posted information on an Internet Web site which is accessible to
> users in foreign jurisdictions. A passive Web site that does little
> more than make information available to those who are interested
> in it is not grounds for the exercise personal jurisdiction. E.g.,
> Bensusan Restaurant Corp. v. King, 937 F.Supp. 295
> (S.D.N.Y.1996).

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). See also

ESAB Group, Inc. v. Centricut L.L.C., 34 F. Supp. 2d 323, 329-31 (D.S.C. 1999) (no general

jurisdiction where the defendant had not conducted any commercial activity over Internet in

forum state).

In the present case, DCS' web site is clearly a "passive web site" on which DCS has

posted information that is available to users in foreign jurisdictions.  DCS does not use its web site

to enter into contracts with residents of foreign jurisdictions that involve repeated transmission of

computer files over the Internet.  (Glubke Aff., ¶11).  As a result, DCS' web site is not a basis on

which this Court can establish personal jurisdiction over Defendants.

Accordingly, Jenzabar has not and cannot establish a basis for personal jurisdiction over

Defendants that complies with the long-arm statute.

B.      The Exercise Of Personal Jurisdiction Over Defendants Would Violate
        Constitutional Due Process.

Even if this Court were to decide that DCS somehow met the statutory requirement of

"transacting business" in Massachusetts, Jenzabar cannot establish that "the exercise of

jurisdiction under state law [is] consistent with basic due process requirements mandated by the

United States Constitution."  Good Hope Indus., Inc., 378 Mass. at 6.  In order to comply with the

constitutional due process requirements, a non-resident defendant must have such purposeful

contacts with the forum state such that the defendant "reasonably anticipate[d] being hauled into

court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  See also

International Shoe Co. v. Washington, 326 U.S. 310, 319-320 (1945).  The due process clause

protects parties from "being subject to the ... judgments of a forum with which he has established

no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471

(1985), citing International Shoe Co., 326 U.S. at 319-320.

Jenzabar has failed to plead and cannot put forth facts to show that the exercise of personal

jurisdiction over any Defendant would be consistent with constitutional due process.  In order to

establish personal jurisdiction over any Defendant, Jenzabar must demonstrate that such

Defendant "purposefully directed" [its or his or her] activities at residents of the forum, and the

litigation [must] result from alleged injuries that 'arise out of or related to those activities.'" Burger King Corp., 471 U.S. at 472. (Emphasis added; citations omitted.)

As explained in Section IA above, the only contact Defendants had with Massachusetts was through two letters sent to approximately 23 individuals within Massachusetts.[2] However, Defendants have not engaged in any business with any Massachusetts individual or entity. (Glubke Aff., ¶5). These limited contacts with Massachusetts are not enough to meet the due process requirement that Defendants should have reasonably anticipated being hauled into Court in Massachusetts.

In fact, this case is strikingly similar to one in which this Court dismissed a plaintiff's claims against former employees for starting competing businesses on the basis that jurisdiction would not comply with the due process requirements. See Nica, Inc. v. Lorgeree, No. 01-CV-10842, 2002 U.S. Dist. Lexis 7240 at *2-3 (D. Mass. January 17, 2002), a copy of which is attached hereto as Exhibit A. In dismissing the case, Judge Zobel noted:

> Regardless of whether Plaintiff would be able to meet the requirements of the Massachusetts Long Arm Statute, its papers do not sufficiently set forth minimum contacts necessary to hail the Defendants before this Court. The minimum contacts analysis is designed to ensure that personal jurisdiction does not arise from random, isolated or fortuitous contacts with the forum state, such as those listed by Plaintiff. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). According to Plaintiff's papers, none of the defendants resides, conducts substantial business, or owns property in Massachusetts. In addition, Plaintiff does not allege that the corporate defendants maintain an office, paid employees, or bank accounts in Massachusetts.

Id. Similarly, in the present case, Plaintiffs have failed to establish that any Defendants reside, have conducted substantial business or own property in Massachusetts. In fact, similar to the

---

[2]     In fact, Middaugh did not sign *any* of the letters sent to individuals in Massachusetts, and Hess only signed one of the letters that was sent to just 12 individuals in Massachusetts. Therefore, there is even less basis on which this Court can exert personal jurisdiction over Middaugh and Hess.

defendants in <u>Nica</u>, Defendants do not maintain an office, pay employees or hold bank accounts in Massachusetts.

Moreover, the exercise of jurisdiction over Defendants by a Massachusetts court would offend due process because Defendants' interaction with individuals in Massachusetts, if any, did not have an impact on Massachusetts commerce to warrant the assertion of jurisdiction. The letters sent by DCS did not have any impact on Massachusetts commerce because DCS did not receive any business from individuals in Massachusetts (either as a result of the letters or on any other basis). See <u>"Automatic" Sprinkler Corp.</u>, 361 Mass. at 444-45 (a contract to purchase a machine built in Ohio was not subject to jurisdiction by a Massachusetts court because it had little impact on Massachusetts commerce). Thus, a Massachusetts court does not have jurisdiction over any Defendant because the exercise of such jurisdiction would violate the Constitutional tenants of due process.

## II.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(a) TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA.

Even assuming there is personal jurisdiction over any or all of Defendants, the Court should transfer this action to the Central District of California. Pursuant to 28 U.S.C. §1404(a), this Court may transfer any civil action to any other district court where the action might have been brought. Such a change in venue may be done "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. §1404(a). The decision to transfer action is within the Court's discretion, and the moving party bears the burden of showing that a transfer is proper. <u>Princess House, Inc.</u> v. <u>Lindsey</u>, 136 F.R.D. 16, 18 (D. Mass. 1991). After the Court's preliminary determination that the plaintiff could have properly brought the action in the transferee court, then the Court must undertake an "individualized, case-by-case consideration of

convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  (Citations omitted.)

      A.     Venue Is Proper In The Central District Of California.

It is clear that Defendants satisfy the initial requirement under Section 1404(a) that this action could have originally been brought in the Central District of California.  There is federal jurisdiction in the District Court for the Central District of California for the same reasons Plaintiffs allege that there is jurisdiction over Defendants in this Court.  (Complaint, ¶7).  Furthermore, there is no need to rely on California's long-arm statute to establish jurisdiction over Jenzabar in California because Jenzabar has a usual place of business in California.  In this action, jurisdiction is not founded solely on diversity of citizenship.  Thus, because a substantial part of the events giving rise to Plaintiffs' claims allegedly occurred in the Central District of California (in which DCS, Glubke and Hess reside and do business), venue is proper in that district.  28 U.S.C. §1391(b).  Furthermore, the Central District of California is also proper venue with respect to a lawsuit against DCS because DCS is headquartered and does business in that district.  28 U.S.C. § 1391(c).

      B.     The Balance Of The Convenience Of The Parties, The Convenience Of The Witnesses, And The Interests Of Justice Weigh Heavily In Favor Of A California Forum.

Once this Court has determined that venue is proper in the Central District of California, the Court must next determine whether transfer to that district is appropriate pursuant to Section 1404(a).  Transfer of this civil action to the Central District of California is appropriate if it will promote the convenience of the parties and witnesses and serve the interests of justice.  See Transamerica Corp. v. Trans-American Leasing Corp., 670 F.Supp. 1089, 1093 (D. Mass. 1987).

In ruling on a motion to transfer venue, the Court must consider factors including: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice, including the ability to compel witness testimony, the relative ease of access to sources of proof, the costs of obtaining witnesses, where the claims arose, and any practical problems associated with trying the case most expeditiously and inexpensively. See F.A.I. Electronics Corp. v. Chambers, 944 F.Supp. 77, 80-81 (D.Mass. 1996), citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

       1.     A majority of parties and key witnesses reside in the Central District of California.

The Central District of California is the most convenient forum for this litigation because three of the four Defendants and the Plaintiffs are located in that district. Specifically, DCS, Glubke and Hess all reside in the Central District of California, and Jenzabar has a regional office located in that district. Based upon the allegations in the Complaint, Glubke and Hess are also key witnesses relevant to this lawsuit. Another key witness specifically identified by Plaintiffs in their Complaint – i.e., Jody Glubke (f/k/a Jody Skjerven; see Complaint, ¶19), also resides in the Central District of California, as does Jill Brubaker[3]. "[T]he convenience of the expected witnesses is 'probably the most important factor and the factor most frequently mentioned.'" Fairview Mach. & Tool Co. v. Oakbrook International, Inc., 56 F.Supp.2d 134, 141 (D.Mass. 1999). Unlike Jenzabar, DCS has no offices, employees or representatives located in Massachusetts.

---

[3]     Furthermore, Michael Hinson (to whom Plaintiffs are most likely referring in Paragraph 18 of the Complaint) is located in Virginia.

2.   Relative ease of access to sources of proof also weighs in favor of a
     California forum.

Based upon the types of claims alleged by Plaintiffs, any damages flowing from those

claims will be primarily determined by proof of DCS' and, in turn, the individual Defendants'

gains flowing from Defendants' alleged wrongdoing.   Therefore, the bulk of the testimony and

evidence concerning any such alleged ill-begotten gains will come from DCS workers and records

kept in California, as well as from workers located in Florida (i.e., Middaugh and Homan) and

clients of DCS located in California.   It is noteworthy that, in their Complaint, Plaintiffs have not

identified any witnesses, let alone key witnesses, who are located in Massachusetts.   As indicated

above, although DCS has sent letters to several potential clients located in Massachusetts, DCS

has not transacted any business (i.e., with clients or vendors) in Massachusetts or obtained any

revenue from clients located in Massachusetts.   Nor has DCS or any representative on behalf of

DCS, personally (i.e., in person or via telephone) solicited any prospective clients located in

Massachusetts.   In fact, approximately 60 to 70% of DCS' total revenues thus far have come from

clients located in California.

3.   The interests of justice strongly weigh in favor of transfer.

Clearly, Plaintiffs' central claims in this case surround the formation of DCS (i.e., in

California) and the business activity of DCS and Glubke, which has primarily taken place in

California.   California also has a far greater interest in the outcome of this case than does

Massachusetts.   DCS is a California Limited Liability Corporation based in California, and does

not have any office, employee or representative located in Massachusetts.   Moreover, two of the

individual Defendants, Glubke and Hess, reside in California.   Jenzabar has a regional office

located in California.   Furthermore, the majority of DCS' sales revenues have come from clients

located in California; DCS has not transacted any business in Massachusetts.   This Court has

15

previously considered the locus of events in evaluating the merits of a transfer of venue. <u>Sea Hunt</u>

<u>Corp.</u> v. <u>O.S. DeBraak, Ltd.</u>, No. 86-2758, 1986 U.S. Dist. LEXIS 16039, at *6 (D. Mass. May

27, 1986).

Plaintiffs have far more financial resources and capability to litigate this case in California

than Defendants have to litigate the case in Massachusetts. In fact, Defendants submit that that

factor was likely critical to Plaintiffs' decision to initiate this action in Massachusetts rather than

California. Unlike DCS, Jenzabar is a national company with regional offices located throughout

the United States, including California. As indicated above, Jenzabar's total annual revenues

likely exceed $40 million. In sharp contrast, DCS is a small start-up company with projected total

revenues for 2003 equal to only approximately $250,000. Defendants submit that it would be

more expensive for *all* parties to litigate in Massachusetts than for them to litigate in California. It

is also noteworthy that the law firm which represents Plaintiffs in this case, Holland & Knight,

LLP, has an office located in California. Thus, especially given the early stages of this litigation,

a transfer of this case as requested would not prejudice Plaintiffs with respect to its choice of legal

representation.

Furthermore, the speed in which this case would reach disposition in California also

weighs in favor of transfer. Specifically, in 2002, the median time in which a case that was filed

in the Central District of California went from filing to trial was 20 months. In contrast, the

median time in which a case that was filed in the District of Massachusetts went from filing to

trial was 25.5 months. <u>See</u> United States District Court-Judicial caseload Profile, available at

<u>www.uscourts.gov/cgi-bin/cmsd2002pl</u>. Therefore, transferring this case to the Central District of

California supports the interests of justice because the case will be resolved more quickly and

efficiently.

Clearly, California is a more convenient and viable forum for Plaintiffs than Massachusetts is for Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint for lack of personal jurisdiction or, in the alternative, transfer this action to the United States District Court for the Central District of California, Southern Division.

Respectfully submitted

DYNAMIC CAMPUS SOLUTIONS, LLC,
MICHAEL L. GLUBKE, RICHARD W.
MIDDAUGH and DOROTHY HESS

By their attorneys,

David M. Felper, BBO# 162460
Jonathan R. Sigel, BBO# 559850
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated: September 30, 2003

17

## CERTIFICATE OF SERVICE

I, Jonathan R. Sigel, hereby certify that I have served a copy of the foregoing by mailing same, postage prepaid, this _30th_ day of September, 2003 to the following:

> Daniel K. Hampton, Esq.
> Holland & Knight, LLP
> 10 St. James Avenue
> Boston, MA 02116

Jonathan R. Sigel

18

1 of 1 DOCUMENT

NICA, INC. v. ROBERT LORGEREE, et al.

CIVIL ACTION NO. 01-CV-10842

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS

2002 U.S. Dist. LEXIS 7240

January 17, 2002, Decided

**DISPOSITION:** [*1] Defendants' motions to dismiss for lack of personal jurisdiction were granted. Judgment was entered dismissing complaint.

**COUNSEL:** For NICA INCORPORATED, Plaintiff: Gerald A. Phelps, Quincy, MA.

For ROBERT LORGEREE, DENNIS ROCCAFORTE, CONTRACTOR MANAGEMENT SERVICES, LLC, HOLLY HOLDINGS LIMITED PARTNERSHIP, DARYL ROCCAFORTE, TODD BUSH, DANIEL NICHOLAS, BENEFITS BY DESIGN, Defendants: Martin P. Desmery, Christopher J. Panos, Craig & Macauley, P.C., Boston, MA.

For NICA INCORPORATED, Counter-Defendant: Gerald A. Phelps, Quincy, MA.

For ROBERT LORGEREE, Counter-Claimant: Martin P. Desmery, Christopher J. Panos, Craig & Macauley, P.C., Boston, MA.

**JUDGES:** RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** RYA W. ZOBEL

**OPINION:**

MEMORANDUM OF DECISION

January 17, 2002

ZOBEL, D.J.

Plaintiff, NICA, Inc., complains that former sales representatives, Defendants Dennis Roccoforte ("Mr. Roccoforte") and Robert Lorgeree ("Lorgeree"), formed

a competing business, Contractor Management Services ("CMS") and Holly Holdings Limited Partnership ("HH"), and actively solicited NICA's customers before terminating their relationship with NICA. It asserts several claims against them, including tortious interference [*2] with contractual relations and advantageous relations, breach of loyalty, conversion, and violations of 93A. All Defendants have submitted motions to dismiss, based on lack of personal jurisdiction, and in the case of Defendants Daryl Roccoforte ("Ms. Roccoforte"), Todd Bush ("Bush"), Daniel Nicholas ("Nicholas"), and Benefits By Design ("BBD"), failure to state a claim upon which relief can be granted. I need not, however, address the merits of Plaintiff's case because the paucity of its papers addressing this Court's personal jurisdiction over Defendants supports a dismissal on that basis.

Plaintiff, NICA, is a Massachusetts corporation. Defendants, Mr. & Ms. Roccoforte, Lorgeree, CMS, and HH all reside, or are incorporated, in Arizona. Defendants Bush, Nicholas, and BBD reside, or are incorporated, in New York.

Regardless of whether Plaintiff would be able to meet the requirements of the Massachusetts Long Arm Statute, its papers do not sufficiently set forth minimum contacts necessary to hail the Defendants before this Court. The minimum contacts analysis is designed to ensure that personal jurisdiction does not arise from random, isolated or fortuitous contacts with the forum [*3] state, such as those listed by Plaintiff. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). According to Plaintiff's papers, none of the defendants resides, conducts *substantial* business, or owns property in Massachusetts. In addition, Plaintiff does not allege that the corporate

2002 U.S. Dist. LEXIS 7240, *

defendants maintain an office, paid employees, or bank accounts in Massachusetts.

Accordingly, Defendants' motions to dismiss for lack of personal jurisdiction are granted. Judgment may be entered dismissing the complaint.

Jan. 17, 2002

DATE

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE